# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANDRE TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 C 7361 |
| vs. ) | |
| ) | Magistrate Judge Schenkier |
| DENNY'S, INC. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This diversity lawsuit arises out of an injury suffered on September 22, 2002, by plaintiff, Andre Taylor, while he was exiting a Denny's restaurant located in Normal, Illinois. When Mr. Taylor attempted to open the exterior door to leave the restaurant, a glass pane in the door broke and caused injury to Mr. Taylor's right arm. In this lawsuit, Mr. Taylor asserted – and Denny's denied – that Denny's was negligent for, among other things, failing to maintain a safe door for its intended use.

The case proceeded to a jury trial that commenced on October 24, 2005. After the conclusion of evidence and closing arguments, the jury deliberated on October 25, 2005. On that date, the jury returned a verdict in favor of Mr. Taylor and against Denny's in the amount of $30,001.50, which included a reduction for contributory negligence (doc. # 34). The Court entered judgment on the verdict on that date (doc. ## 31-32).

Presently before the Court are defendant's motion for judgment as a matter of law under Fed.R.Civ.P. 50(b) (doc. # 36), and plaintiff's bill of costs for $702.25 pursuant to Fed.R.Civ.P.

54(d)(1) (doc. # 35). For the reasons that follow, the Court denies defendant's motion, and grants plaintiff's bill of costs in the full amount sought.

## I.

While Illinois provides the substantive rules for this diversity case, federal law governs our consideration of a motion for judgment as a matter of law under Rule 50. *Mayer v. Gary Partners and Co., Ltd.*, 29 F.3d 330, 335 (7th Cir. 1994). When considering a Rule 50(b) motion, a court's inquiry is limited to "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 629 (7th Cir. 1996) (citations omitted). That test requires us to apply a "stringent standard" when reviewing a jury's verdict, taking care "to avoid supplanting our view of the credibility or weight of the evidence for that of" the jury. *Id.* at 630 (quotations omitted).

In light of these standards, we begin with a summary of the relevant evidence and jury instruction.

### A.

Some time shortly after 1:30 a.m. on September 22, 2002, plaintiff and several of his friends left a social gathering that they had attended since sometime between 7:00 and 9:00 p.m. on September 21, 2002. The Denny's in question had an exterior door that led into a vestibule area; in the vestibule area a separate, interior door led into the restaurant itself. The exterior door is rectangular in shape and has a relatively thin strip of wood, narrower than the width of an adult hand, that runs along the perimeter of the door. The rest of the door is made up of 15 separate panes of glass, inset into thin strips of wood running up and down and then across the door. The glass panes

are one-eighth inch thick, and because they are small pieces of glass, they are relatively strong; according to the testimony of a repairman for Denny's, "it takes quite a bit to break them." There is a handle for a patron to use when pulling the door open from the outside. There is no push bar or other handle running laterally across the door for a person to use when pushing the door open to leave the restaurant. Rather, there is a small rectangular brass plate on the right-hand side of the wood strip that borders the glass on the door. One of Mr. Taylor's friends who was present during the events of September 22, 2002, Charles Jones, testified that as he entered the door, he noticed that one pane of glass in the exterior door was "not flush." Mr. Jones did not identify which pane of glass was not flush, or whether it was the same pane of glass that Mr. Taylor broke. Mr. Jones did not warn Mr. Taylor about this particular pane of glass, or tell anybody at Denny's about it – either prior to the incident or thereafter.

When entering the restaurant, plaintiff and his friends negotiated the exterior and interior doors of the restaurant without incident. After he was inside the restaurant and had placed his order, plaintiff realized that he had left his wallet in the car, and thus attempted to leave the restaurant to retrieve it. When plaintiff attempted to leave the restaurant, he placed his right hand on the exterior door to exit to the parking lot. Plaintiff was not in a hurry, was not running, and – viewing the evidence most favorably to him – was not intoxicated.[1] Mr. Taylor testified that he put his hand on the brass plate, although he allowed that it was possible that this hand was both on the brass plate

---

[1] There was testimony that plaintiff and his friends had consumed alcoholic beverages during the four to six hours that they had been at the social gathering prior to visiting the Denny's restaurant. While Denny's employee testified (by deposition) that he thought that Mr. Taylor and his friends were drunk and that one of them had said that was the case when they entered the restaurant, plaintiff and one other witness who testified at trial denied that they were intoxicated. Moreover, the jury was shown a video of Mr. Taylor leaving the counter at the Denny's area where he had placed an order to exit the restaurant (unfortunately, the video did not show the vestibule area where the exterior door is located). From the Court's view of that video, the jury reasonably could have concluded that the video showed no indication by Mr. Taylor's movements that he was intoxicated or out of control.

3

and the glass or slipped from the brass plate onto the glass. In any event, Mr. Taylor's hand broke through one of the panes of glass in door, causing him to cut his right arm and lacerate his flexor tendon. That led Mr. Taylor to seek emergency treatment, and shortly thereafter, on September 25, 2002, to have surgery performed on his wrist. While Mr. Taylor (and a supporting witness) testified that he continues to suffer some residual discomfort and limitation from the injury, Mr. Taylor's surgeon testified (by deposition) that the surgery was a success. Mr. Taylor was released to return to work as of November 25, 2002, and released from the doctor's care as of January 30, 2003. Mr. Taylor is not currently a candidate for any further surgery or treatment for his wrist.

After the close of evidence, the jury was instructed, without objection, on the following elements that plaintiff was required to prove in order to establish liability:

> First: There was a condition on Denny's property which presented an unreasonable risk of harm to people on the property.
>
> Second: Denny's knew or in the exercise of ordinary care should have known, of both the condition and risk.
>
> Third: Denny's could reasonably expect that people on the property would not discover or realize the danger, or would fail to protect themselves against such danger.
>
> Fourth: Denny's was negligent in one or more of the following ways:
>
>> a) Failed to properly maintain the premises;
>>
>> b) Failed to maintain a safe door for its intended use; or
>>
>> c) Failed to have shatter-proof glass panes in the door.
>
> Fifth: The plaintiff was injured.
>
> Sixth: The condition of Denny's property was a proximate cause of plaintiff's injury.

(Instruction No. 13).² Upon consideration of the evidence in the instructions, the jury returned a verdict in favor of plaintiff in the amount of $33,335.00. The jury assigned to plaintiff contributory negligence in the amount of ten percent, and accordingly, reduced the ultimate award to plaintiff to $30,001.50.

## B.

As it argued to the jury, defendant asserts in its post-trial motion that plaintiff "presented absolutely no evidence" to support five of the six elements of his claim (Def.'s Mot. at 3) – that is, on all elements other than injury. However, defendant's motion focuses only on one of those elements, and so do we: the element requiring plaintiff to prove that Denny's knew, or in the exercise of ordinary care should have known, of both the condition and the risk. While we are far from overwhelmed by the evidence offered by plaintiff in the case, we cannot agree that it was so inadequate that it warrants overturning the jury verdict.

We find the decision of *Ward v. K-Mart Corporation*, 554 N.E.2d 223 (Ill. 1990), instructive here. In that case, plaintiff sued K-Mart for injuries suffered when he walked into a concrete post located just outside a customer entrance to the department store. At the time of the injury, plaintiff was carrying a large mirror which he had purchased from the defendant, which obscured his vision. After a jury returned a verdict for plaintiff, the trial court entered judgment notwithstanding the verdict for the defendant, a ruling that was affirmed by the appellate court. On review, the Illinois Supreme Court reversed, holding that "defendant's duty to exercise reasonable care extended to the

---

²We quote above only the relevant portion of Instruction No. 13. The instruction goes on to inform the jury of the elements at issue on the affirmative defense of contributory negligence. Since defendant attacks only the finding of liability, we omit as unnecessary that portion of the instruction.

risk that one of its customers would collide with the post while leaving the store carrying a large, bulky item." 554 N.E.2d at 224.

In explaining that ruling, the Supreme Court acknowledged that there was "nothing inherently dangerous about the post. It is just an ordinary post." 554 N.E.2d at 232. However, the Supreme Court explained that the proper question "is not whether the post was inherently dangerous, but whether, under the facts of this case, it was unreasonably dangerous. This question generally cannot be answered by merely viewing the condition in the abstract, wholly apart from the circumstances in which it existed." *Id.* The court reasoned that while many dangerous conditions may nonetheless not be *unreasonably* dangerous, by the same token, "there may also be conditions which, though seemingly innocuous enough in themselves, indeed present an unreasonable danger under certain circumstances." *Id.* After discussing several cases to illustrate the point, the Supreme Court stated that "[i]f the defendant may reasonably be expected to anticipate that even those customers in the general exercise of ordinary care will fail to avoid the risk because they are distracted or momentarily forgetful, then his duty may extend to the risk posed by the condition." 554 N.E.2d at 234.

Applying those principles, the Supreme Court in *Ward* found that the defendant's duty of reasonable care encompassed the risk "that one of its customers, while carrying a large, bulky item, would collide with the post upon exiting through the customer door." 554 N.E.2d at 234. The Supreme Court held that it was reasonably foreseeable to K-Mart "that a customer carrying a large item which he had purchased in the store might be distracted and fail to see the post upon exiting the door," particularly since the post was located immediately outside an entrance where customers routinely would carry large bulky items. *Id.* at 233. The court said its decision might have been

6

different had the post been located further away from the building, or if plaintiff had not been carrying a vision obscuring item. *Id.* at 232.

The Supreme Court also rejected the proposition that its holding would "impose on defendant the impossible burden of rendering its premises injury-proof." 554 N.E.2d at 234. To the contrary, the Supreme Court noted that the burden on K-Mart of exercising reasonable care to address this risk was slight: "[a] simple warning may well serve to remove the unreasonableness of the danger posed by the post." *Id.* at 234.

While the facts of this case do not precisely track those in *Ward*, we find that the reasoning of *Ward* shows why the verdict in this case was one that the jury was entitled to reach. As with the post in the *Ward* case, the door here is just an ordinary door, and there is "nothing inherently dangerous" about it. *Ward*, 554 N.E.2d at 232. However, as the *Ward* decision teaches, context matters. And the context here is that the door was largely made of glass. A jury reasonably could conclude that the absence of a push bar running across the door, coupled with the presence of only a narrow push plate on the side of the door, made it foreseeable that people routinely would push on the glass to exit the door. The jury reasonably could have found that this door was not safe for its intended use because it provided inadequate means for a person to use the door without pushing on the glass.

Moreover, a jury reasonably could conclude that the narrowness of the push plate made it reasonably foreseeable that even someone attempting to use that device to open the door might miss the push plate, or that a hand might slip off the push plate and hit the glass. That could lead to a situation in which a person exerts force to open the door that is entirely suitable to use when pushing on a metal plate, but which is strong enough to break the glass if a patron misses the push plate or

7

his/or her hand slips from the push plate to the glass. Indeed, that is what Mr. Taylor testified occurred here. A jury reasonably could have found that in these circumstances (that is, in the absence of a push bar or a wider push plate), Denny's should have used more robust glass or some kind of shatter-proof glass to address the foreseeable situation in which someone intends to use the push plate but inadvertently strikes the glass instead.

Thus, viewing the evidence in the light most favorable to Mr. Taylor, and guided by the Illinois Supreme Court's analysis in *Ward*, we conclude that there was sufficient evidence here from which a jury reasonably could conclude that Mr. Taylor satisfied all of the elements of his claim of liability. The jury reasonably could find that the exterior door, when used to exit the restaurant, presented an unreasonable risk of harm to patrons; that Denny's knew, or in the exercise of ordinary care should have known, of both the condition of the door and the risk; that Denny's reasonably could expect that patrons would not discover or realize the danger, or would fail to protect themselves from it; that Denny's was negligent in failing to maintain a safe door for its intended use; that plaintiff was injured; and that the condition of Denny's property was a proximate cause of the injury. We have considered Denny's arguments to the contrary, but find them unpersuasive.

*First*, Denny's argues that plaintiff was required to offer expert testimony to support his claim about the adequacy of the glass in the door (Def.'s Mot. 5-6). However, the Illinois authorities that Denny's cites in support of this proposition do not state that an expert is required to establish negligence in the type of glass used in a door. *Glass v. Morgan Guaranty Trust Co.*, 606 N.E.2d 384 (Ill. App. 1992); *Christou v. Arlington Park – Washington Park Race Track Corp.*, 432 N.E.2d 920 (Ill. App. 1982). Indeed, in *Glass*, the Court commented that plaintiff had failed to produce "any expert affidavits *or other evidence*" to her claim, 606 N.E.2d at 386 (emphasis added), a statement

that suggests either expert testimony or probative lay testimony could be sufficient to establish liability.

*Second*, Denny's argues that because there was no evidence of prior mishaps using the exterior door, there was no evidence that Denny's knew or, in the exercise of ordinary care, should have known of any risk created by the door (Def.'s Mot. at 4). While prior incidents certainly would be probative of Denny's knowledge, defendant cites no case – and we are aware of none – holding that this is the only method of proving knowledge. And with good reason: carried to its logical end, Denny's argument would give any defendant a "free pass" for the first time a condition on its premises caused an injury. We further note that in the *Ward* case there is no indication of prior episodes of individuals colliding with the concrete post at K-Mart while carrying a bulky object; yet, the Illinois Supreme Court found that it was within the jury's province to find that it was reasonably foreseeable to K-Mart that such an incident would occur. In our view, the same reasoning applies here. Certainly, Denny's knew of the properties of the door that it used in its restaurant. And, in line with our discussion above, a jury reasonably could have found that Denny's knew or should have known that the door presented a risk that patrons would inadvertently strike the glass when exiting the restaurant.

*Third*, we find the other Illinois authorities cited by Denny's distinguishable on their facts. In *Anglin v. Oros*, 628 N.E.2d 873 (Ill. App. 1993) (Def.'s Reply Mem. at 2), the appellate court affirmed summary judgment for defendant in a case where plaintiff suffered an injury when she placed her hand through a storm door. However, in that case, plaintiff had intentionally pushed against the glass portion of the storm door even though someone else, using the handle on the door, already had closed it. On those facts, the appellate court (distinguishing the case there from *Ward*)

9

held that the evidence "does not show that defendant could have foreseen that plaintiff would exert force against the glass portion of the door in attempting to close the storm door when he was already so engaged." 628 N.E.2d at 877. By contrast, in this case, it was foreseeable that a patron could inadvertently exert force against the glass on the door while trying to use the narrow brass push plate. In *Tomczak v. Planetsphere, Inc.*, 735 N.E.2d 662 (Ill. App. 2000) (Def.'s Mot. at 3-4), the appellate court affirmed summary judgment for defendant on a claim brought by a patron of a rollerskating rink who suffered injuries in a fall allegedly caused by a puddle of water on the rink's surface. The appellate court noted that the pooling of water on the surface allegedly was caused by a leak in a roof or skylight that apparently had occurred only recently. The appellate court explained that plaintiff had failed to show that defendant had actual notice that the water was present, or that it reasonably should have known of the accumulation of water. 735 N.E.2d at 667-8. Once again, by contrast, in this case Denny's was well aware of the properties of its door; for the reasons we have stated above, a jury reasonably could conclude that Denny's knew or reasonably should have known of the risk the door presented. In *Zonta v. Village of Bensenville*, 521 N.E.2d 274 (Ill. App. 1998) (Def.'s Mot. at 4-5), the appellate court affirmed summary judgment for defendant in a case where plaintiff sued for injuries suffered when the plate glass window that he was leaning his arm on broke. The Court there found that plaintiff had offered no evidence that the glass was too thin or otherwise was defective. 521 N.E.2d at 276-77. By contrast, in this case, there was evidence from which a jury reasonably could conclude that the devices provided by Denny's to open the door without hitting the glass were inadequate, and that in those circumstances, the door was not "safe for its intended use."

As in *Ward*, we do not view the jury's verdict here – or our upholding of it – as imposing on Denny's "the impossible burden of rendering its premises injury-proof." There are many things that

Denny's might do to address the situation if it so chooses, ranging from posting some kind of notice, to providing additional means by which the door may be opened without making it likely that the glass will be struck, to providing a different kind of glass in the door. We do not presume to dictate what action Denny's should take, or on the adequacy of any particular action it might take. All we do here is hold that on the case presented at trial, the jury reasonably could conclude that Denny's was liable for plaintiff's injuries. Accordingly, the Court denies Denny's Rule 50(b) motion.

## II.

Plaintiff seeks an award of $702.25 in costs as the prevailing party in the case. The costs that he seeks are for fees of the Clerk ($271.00), service of summons and subpoena ($31.00), and court reporter's fees ($400.25). During a hearing on November 10, 2005, defendant stated on the record in open court that if the motion for judgment as a matter of law were denied, Denny's would have no objection to the bill of costs sought by plaintiff. Accordingly, we award plaintiff costs in the full amount sought: $702.25.

## CONCLUSION

For the reasons set forth above, the Court (a) DENIES plaintiff's Rule 50(b) post-trial motion for judgment as a matter of law (doc. # 36), and (b) GRANTS plaintiff's bill of costs awarding plaintiff $702.25 in costs.

ENTER:

/s/ Sidney I. Schenkier

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: January 12, 2006